This proceeding was begun in October, 1936, by the plaintiff, Mrs. Dambly, to foreclose a mortgage note dated January 24, 1928, held by her and executed by the defendants, for the sum of $375, with interest at 8% per annum from date, plus 10% attorney's fees. According to the petition filed at that time, total payments of $180 had been made on the note and credited to interest. Shortly after the suit was filed, Mrs. Dambly died, and her succession was involved in protracted litigation. In March, *West Page 617 
1940, Mrs. Pearl Riley Hogan, the sole heir of Mrs. Dambly, filed a supplemental petition asking that she be made a party to the suit and that the foreclosure proceedings be continued. At her instance, notices to pay were served on the defendants and the writ of seizure and sale was issued, and the property seized by the Sheriff of East Baton Rouge Parish in April, 1940. Before the property was sold. Mrs. Hogan died, and in April, 1941, Edward Riley and Emmett C. Riley filed a supplemental petition in the proceeding as the sole heirs of Mrs. Hogan and asked for a continuance of the foreclosure and had the property advertised for sale by the sheriff.
In the month of June, and before the property was advertised to sell, the defendants filed a petition for an injunction to restrain the substituted plaintiffs and the sheriff from selling the seized property on the ground that the mortgage note sought to be foreclosed had been paid, setting up the manner and method by which they claim said note was paid, in substance, as follows:
That during the month of July, 1934, the attorney for Mrs. Dambly, the then holder of said note, wrote defendants a letter requesting that they either pay the note or convey to Mrs. Dambly the mortgaged property in satisfaction of the note; that they were unwilling to convey the property to Mrs. Dambly in satisfaction of the note as they had a large equity in the property, but that they entered into an agreement with Mrs. Dambly whereby she was to collect the rents on the house situated on the property and apply the same on the note until it was paid in full; that Mrs. Dambly collected rent on said house from September through December, 1934, inclusive, at the rate of $6 per month, and that from January, 1935, until the date of her death in November, 1036, she collected rent on said house at the rate of $7 per month; that after her death, Mrs. Hogan collected rent on said property at the same rate until Mrs. Hogan's death, after which her heirs, the present plaintiffs, continued to collect said rent. They therefore allege that said note has been fully paid by said rent collections, but if it has not been fully paid, they ask that they be given an accounting of the rent collected and if any balance remains unpaid that it be decreed not yet due and that an injunction issue to restrain the sale of the property until the note is paid by said rent collections under the original agreement with Mrs. Dambly.
Judgment was rendered in favor of the defendants in the foreclosure suit, enjoining the sale of the property in the executory proceeding in excess of the sum of $22.93, with interest thereon at 8% per annum from January 1, 1941, said balance being due on that date. The plaintiffs in the foreclosure suit were ordered to pay the costs. From this judgment, the plaintiffs have appealed, and the defendants have filed an answer to the appeal asking that the judgment be amended by decreeing that the mortgage note has been fully paid by the rent collections, and if it be found that said note has not been paid in full, that the balance be decreed as not past due and be paid out of the rent collections in accordance with the agreement.
Evidence was offered by the defendants in the foreclosure suit (plaintiffs in the injunction suit) to show the alleged agreement had with Mrs. Dambly in July, 1934, and objection was made to this evidence on the ground that it was an attempt to alter and vary by parole the terms and contents of the note and mortgage; that it was in effect an attempt to prove by parole an antichresis which is required to be in writing. The objection to the admission of the parole testimony was overruled, and counsel for plaintiffs reurge in this court their objection to the admissibility of the testimony to prove the alleged agreement between defendants and Mrs. Dambly by which the latter was to collect the rents from the property and apply them on the note.
The evidence was properly admitted, as it is well settled that parole testimony is admissible to show the payment or discharge of an obligation or contract required to be in writing, as such evidence does not change or alter the terms of the written contract, but merely shows the manner, method, or fact of its payment or discharge. Dwight et al. v. Linton, 3 Rob. 57; Succession of Bagley, 120 La. 922, 45 So. 942; Pemberton et al., Adm'r v. Maignan, 27 La.Ann. 134.
The agreement sought to be shown by parole was not an antichresis as the immovable property was not given in pledge by the defendants, but, as a means of liquidating the note which defendants owed Mrs. Dambly, they authorized her to collect *West Page 618 
the rents on their property and apply these rents in payment of the note. The agreement was nothing more than a method by which the note was to be paid out of the rent collections and this agreement did not in any manner change or alter the note or mortgage.
The testimony clearly shows that Mrs. Dambly made this agreement with the defendants and collected the rents on the property up to the time of her death. After her death the rents were collected by a Mrs. Madden, who seems to have been a sister of Mrs. Dambly and who must have claimed some interest in her succession. Plaintiffs deny that Mrs. Madden had any authority to collect these rents for the succession; however, we find from the testimoney of Mr. Roland Kizer, who was the attorney for Mrs. Dambly during her life, and who was the attorney for Mrs. Hogan during her life after the death of Mrs. Dambly, in the litigation that followed the latter's death, that the rents collected by Mrs. Madden pending the litigation in the succession were applied in payment of the succession debts of Mrs. Dambly, and, therefore, the succession of Mrs. Dambly must be charged with all rents collected on this property by her prior to her death and also the rents collected thereafter by Mrs. Madden and Mrs. Hogan. No accurate account has ever been rendered to the defendants of the amount of rents collected by any of the parties during all this time, even though several requests were made by the attorney for defendants for an accounting. When these requests were made for an accounting, defendants' attorney promised to settle the balance if defendants were advised of the correct balance due.
It does not appear from the record why Mrs. Dambly instituted foreclosure proceedings in October, 1936, after she had made the agreement with defendants to collect the rent on the property and apply it on the mortgage note. In any event, when her attorney was advised of this agreement, he discontinued the proceedings and promised to give defendants' attorney a statement of the rents collected and the balance due, but did not do this for the reason that Mrs. Dambly died shortly thereafter. Again, when the foreclosure suit was renewed in March, 1940, Mr. Kizer, on having his attention called to the agreement made by Mrs. Dambly with defendants, stopped further proceedings in the foreclosure. Nothing further was done, as already stated, until after Mrs. Hogan's death and the present plaintiffs, as her heirs, were made parties to the suit.
We think that the defendants are entitled to an accounting for all rents collected on the property since September, 1934, up to April, 1940, when the seizure was made and the property taken over by the sheriff and no further rents paid to anyone by the tenants after that date by orders of the sheriff. This accounting should be reckoned up to April, 1940, and we have attempted to figure the amount collected as rent between these dates and have arrived at the following figures:
We find credits on the back of the note aggregating $180, which amount was paid as interest on the note for six years, as these payments were made periodically and apparently were made to cover the annual interest of $30 on the note. Therefore, we find that the interest on the note was paid to January 24, 1934. From January 24, 1934, to April 1, 1940, the interest on this note for $375 at 8% per annum amounts to $185.50, making a total due on the principal and interest of the note on April 1, 1940, the sum of $560.50.
We find the following credits should be given against the above total: 4 months rent at $6 per month from September 1 to December 31, 1934, $24, from which should be deducted $7 expended by Mrs. Dambly during that period for repairs on the house, leaving a net credit as of January 1, 1935, of $17; to this we add interest at 8% per annum from January 1, 1935, to April 1, 1940, $8.50, making a total credit on this item of $25.50; from January 1, 1935, to April 1, 1940 — 63 months — rent was collected at the rate of $7 per month, or a total of $441; to this we add interest on these various payments during this period at 8% per annum, calculated according to the mercantile rule for partial payments, or a total interest of $92.61, making the total credit for this item the sum of $533.61; adding these total items of credit, $533.61 and $25.50, gives a total credit of $559.11, from which should be deducted insurance paid on the property, estimated by Mr, Kizer at $25.65, leaving a net credit of $533.46. Taking this from the total amount of the note of $560.50, leaves a balance due on April 1, 1940, of $27.04.
As the holders of the note were bound by the agreement entered into by *West Page 619 
Mrs. Dambly with defendants, there was no justification in beginning foreclosure proceedings until a full accounting was given defendants, and consequently the cost of this proceeding will have to be borne by the plaintiffs. On the payment by defendants of the above balance with interest thereon at 8% per annum from April 1, 1940, they will be entitled to all rent accruing on the property after that date.
For the reasons assigned, it is ordered that the judgment appealed from be amended by showing the balance due on the note sought to be foreclosed as of April 1, 1940, to be the sum of $27.04, with 8% per annum interest thereon from that date until paid; that upon payment of said balance the defendants will be entitled to receive all rents on the property from said date, and as thus amended, the judgment is affirmed; that plaintiffs in the foreclosure suit pay all costs incurred in both courts.